Thank you, your honors. Good morning and may it please the court. My name is Erin Pettigrew and I am joined by Dan Johnson. We represent the plaintiff appellants Ms. Rachel Price and Tess Gahart. I would like to reserve three minutes on rebuttal if I may. We are here today because Shell Oil twice passed plaintiffs up for promotion in favor of heterosexual men who had less experience on the job, less specialized education, and less tenure at the Anacortes Refinery. Plaintiffs seek a new trial today on two grounds. The first is that the trial court issued a jury instruction which finds no support in either the law or the facts of this case. And second, because plaintiffs were deprived of the opportunity to present their claim of retaliation to the jury. Turning to the first issue, jury instruction number 12 was not asked for by either party, and plaintiffs vigorously opposed jury instruction number 12. Am I correct in thinking that your objection to jury instruction number 12 is to the second paragraph? I'm sorry, your honor. Is your objection to jury instruction number 12 is to the second paragraph of the instruction, is it not? Or the third. Or the third. The second if you. Our objection is to the entirety of instruction number 12. That's why I want to break it down. Can you walk, in fact, I found the jury instruction really hard to understand in the context of this case. And maybe you could walk through it for us. I'll ask opposing counsel as well. Just line by line, and what does it mean? Well, we agree, your honor. We're actually not entirely sure what the court intended for this instruction to mean. It states in plain language that Shell Oil admits that those involved in the decision-making process were its agents. Okay. So it says the employees involved in making the promotion decision in 2011 and 2012. And in 2011, that was Mr. Ledet, Mr. Lindsay, and Ms. Slane. Is that correct? That is correct, your honor. Although plaintiff's theory of the case is that the men in charge of the lab, not necessarily those who were the You've got two separate ones. But, Judge, you could ask you to identify the people. So the involved in, in 2011, Shell says that Ledet, Lindsay, and Slane were authorized to make the promotion decisions. And the theory of your case is that there were other individuals in 2011 who were also involved in that decision? Well, your honor, the 2011 promotion decisions were also – well, we have to take into account both 2011 and 2012. Well, let's start with 2011. Yes, your honor. That is correct. Okay. Now you can turn to 2012. So I understand that Slane and Blakeway were the people who were authorized by Shell to make the promotion decision. And your theory is that there were other individuals involved as well? Correct. And that's Mr. Ledet and Mr. Fox? Correct. And also Mr. Lindsay. Okay. Get back to the instruction now, which is, I understand that the first paragraph – I was asking about the a few paragraphs. The first paragraph, to me, is confusing, too, because it says, they admit they were acting as their agents, but denies they were acting within the scope of their authority. The instruction then goes on to say, if you find that they were agents, then any act or omission was the act of – and acting within the scope of authority. Any act is the act of equilan. And that's correct as a matter of Washington responding to a superior law, right? Correct. And in fact, plaintiffs proposed that particular instruction, and that was denied by the Supreme Court. Okay. Good. Now we're on track here. So you don't object to that paragraph? Well, to the extent that, yes. No, we don't. So could I get back to the first paragraph? I just have one further question. So when it says, Shell admits that those employees were acting as their agents and denies that those employees were acting within the scope of authority. And since we don't know precisely who the employees involved in making the promotion decisions in 2011-2012 were, is that a correct statement of fact? I mean, was the court correct in saying that Shell admitted that they were acting as their agents and denied that they were acting within the scope of authority? That couldn't be true as to the people who Shell admits were authorized to make the promotion decision. Or let it, and whimsy. That is correct. That cannot be true, Your Honor, because that's a well-established principle under discrimination law, that when an adverse employment decision occurs, it is necessarily imputed to the employer. So the district court made a factual error there. Is that correct in that last sentence? That is a factual error. Okay. This next sentence that Judge Hurwitz just read you about, if they're acting within the scope of authority, that's a correct statement of Washington responding at superior law. And then go to the third paragraph now and explain that one to us. It says, if you find that those employees were not acting within the scope of authority as Equilon Enterprises' agent, then you must find for Equilon Enterprises LLC. What is so troubling about that sentence, Your Honor, is that it upends decades of precedent as to what is causation in a discrimination case. What would be a correct statement? Would it be, say, would it be that if you find that they were not acting within the scope of their authority, you may consider their actions as evidence? No, Your Honor. Scope of authority is never appropriate in a discrimination case. Discrimination cases do not ask where the bias comes from. If the bias was not authorized, regardless, it is imputed to the employer where an adverse decision was made in substantial part on that bias. I'll tell you what troubled me about reading this instruction was the final clause, then you must find for Equilon. It may well be that you give different weight to actions taken by people outside the scope of their authority, but it doesn't mean that you must find for the employer under Washington law, does it? That's correct, Your Honor. It is — Doesn't that contradict Instruction 15, which says that if either gender or sexual orientation was a substantial factor in Shell's decision not to promote Ms. Price, then your verdict should be for Ms. Price? I mean, it seems to be directly contradictory. It is, Your Honor. So help me understand Washington discrimination law. There was — I understand the substantial factor rule, which is part of Instruction 15, but there was an argument between you and opposing counsel about whether Washington has adopted this cat's paw theory, because I understood your theory of the case to be that for — at least for 2012, that Slane and Blakeway were not themselves biased, but because they reviewed Ledet's performance evaluations and Fox's information, discriminatory information got into their decision-making process, which is not — it seems to be closer to Federal law regarding the discriminatory person is using the innocent decision-maker as a cat's paw. Maybe you could point me to the right cases there. Yes, Your Honor. Subordinate bias theory is recognized in Boyd v. State Department of Social Health and Services, as well as City of Vancouver v. Public Employment Relations Committee. And really, it turns on the question of causation. If the impermissible bias or discrimination of an individual who may or may not have been an adverse employment decision, and that is a substantial factor in that decision, then the plaintiffs have won. And this is the fundamental problem with jury Instruction No. 12, is that it takes that away entirely. That is to say, the jury could have agreed — That's why I was asking you before. You could find that somebody acted outside the scope of their authority, but that their actions somehow influenced the employment decision. That's right. And in fact, Your Honor, if this instruction is deemed a permissible defense in the discrimination context, the possible outcomes are quite grave, I'm afraid. It would allow a corporate defendant who has an anti-discrimination policy to simply say every time, this person was not authorized to discriminate, and therefore the corporation is not liable. Well, but we reject those sorts of arguments that, well, if a supervisor acted tortiously — acting tortiously is not part of his authority. I mean, we reject those. So I think if there was evidence that Ms. Lane or Ms. Blakeway were themselves discriminatory, I don't see how the corporation could say, well, they were our decision makers, but to the extent they acted discriminatorily, it wasn't in the scope of authority. But here, there's no evidence. In fact, I think plaintiff agrees that Ms. Lane and Ms. Blakeway were not themselves discriminatory. That's correct, Your Honor. But this instruction goes at the very heart of plaintiff's theory, which is that in the 2012 promotion decisions in particular, individuals who were not authorized to be involved nevertheless influenced the decision with their homophobic, sexist, discriminatory attitudes. Can I ask you a slightly different question than what we've been asking now? You represent two plaintiffs. Correct. As to the first promotion, could they have both been injured? Yes. Why? I mean, under your theory, had there not been a discriminatory company, only one of them would have gotten the promotion. Well, the truth is, Your Honor, both were discriminated against. I understand. I'm asking a causation question. I understand both were discriminated against, but there was only one position open. So had Equilon not acted in a discriminatory way, only one of them would have gotten the promotion, correct? I understand your point, Your Honor, and that's true factually. However, there were other damages involved, including emotional distress damages. And plaintiffs believe— Are emotional distress damages recoverable under Washington anti-discrimination law or only under your outrage claim? Under the Washington law against discrimination, yes. Yes. The other troubling legal issue with jury instruction number 12, Your Honor, is that this is an affirmative defense to liability that was never pled by Shell. And this is reflected by the fact that Shell didn't ask for this affirmative defense in their proposed jury instructions. It was given sua sponte. Moreover, the evidentiary burden that Shell would bear with that affirmative defense was likewise not present in the jury instruction. Also, as we've discussed, this instruction finds no support in the facts. At no time did Shell argue that the individuals who made the promotion decisions and those who were acknowledged as involved in those decisions were not authorized— Right. But that gets back to Judge Acuda's question, doesn't it? With respect to 2012, you don't contend that the individuals who made the decision were biased? No, Your Honor. But then the instruction says that Shell denies that those employees were acting within the scope of authority, which doesn't — it just doesn't make sense. This is factually inaccurate. I mean, they admitted that they were acting within the scope of the authority as the decision makers. That's correct. It is an inherently confusing and misleading jury instruction. And I would add that the model jury instruction in the Ninth Circuit provides that the individual whose authority is disclaimed be identified in the instruction. And indeed, plaintiffs asked as a last-ditch effort that the Court include those individuals' names in the instruction, and the Court declined to do that as well. Did you wish to save some rebuttal time? Yes, Your Honor. Thank you. I will conclude. Good morning. Cheryl Willett for Equilon Enterprises, doing business with Shell Oil. Obviously, the parties see this as from a very different perspective, and I will start out with the jury instruction itself. Well, before you get to the jury instruction, let me just make sure I understand the posture of this case. You're not arguing on appeal that there was insufficient evidence to go to the jury, are you? Absolutely not. Okay. And so putting aside whether or not they proved their claim as to either of these two incidents, the question with respect to the jury instructions is simply whether or you're not arguing with respect to the jury instructions that it was harmless error. You don't have that anywhere in your brief that I see. Correct? Actually, Your Honor, we do believe that there was. Did you put that? Did you argue in your brief it was harmless error? We did not argue that in the brief. Okay. But we believe that the instruction was appropriately given, despite the fact that we objected to the instruction. But I'm asking a different question. So you're not you don't contest there was sufficient evidence to go to the jury, and in your briefs you did not argue harmless error. Correct? We did not argue that it was insufficient evidence to go to the jury. In our brief, we did not argue harmless error. Okay. Now, so therefore, I think we're stuck with the question of whether the instruction is an accurate statement of the law. So now tell me why you think it is. And we believe that the instruction is an accurate statement of the law. First of all, in looking at whether or not the instructions are accurate statements of the law, the instructions must be looked at as a whole. And this particular instruction in the first paragraph, what Judge Kronauer did was to identify that the plaintiff was claiming that employees, plural, were involved in making promotion decisions in 2011 and 2012, and Equaline Enterprise admitted that those employees who were authorized to do so were with, in fact, were, in fact, acting within the scope of their authority. So what's the question? I'm sorry. Go ahead. I was just going to say, looking at the instructions as a whole, to me, makes your position more difficult in a way, because I don't understand how instruction number 12 is consistent with instruction number 15, which does appear to be a correct statement of the law as it applies in this case, and it's hard to see how both of them can be correct at the same time. I think, Your Honor, that the – if you look at the second paragraph of instruction number 12, what you see in that instruction is a correct statement of the law. Your opponent doesn't dispute that. That's correct. So her problem was with the other two paragraphs. And the first paragraph, as I indicated, indicates that there are multiple individuals who – I said to opposing counsel. It says that Shell – the plaintiffs claim that the employees involved in making the promotion decisions in 2011. So in 2011, it was Ledet, Lindsey, and Slane. Is that correct? They're incorrect. The individuals who were involved in the 2011 promotion were Ledet, Slane, and Lindsey. That's correct. Okay. And then, and 2012. And Shell says it authorized Slane, and, likewise, were the decision-makers. And then the plaintiffs claim that there were two other individuals. Ledet – did you say Ledet is his name? Mr. Ledet was one of the actual decision-makers in 2011. And Fox. Well, and they claim that Ledet's performance evaluations and information from Fox affected them. So which employees – the employees are unidentified, so is it all of them? With respect to the way that the judge actually stated this instruction, we believe that this instruction very clearly talks about those individuals who were granted the authority to make decisions by Shell. So Ledet – you're saying Ledet, Lindsey, and Slane in 2011. That's correct. And Slane and Blakeway in 2012. But then it goes on to say it denies that those employees were acting within the scope of authority. So is that factually inaccurate? Because I thought that Shell had, in fact, conceded that they had authorized them to make the decision. Shell did, in fact, concede that those three individuals in 2011 and those two individuals in 2012 were actually acting within the scope of their authority and were the decision-makers. So then as to those people, that's an inaccurate instruction, correct? As to the other individuals who were identified during questioning by plaintiffs, those statements are that those individuals – and this was an argument that was made to the Court. No, I understand the arguments that were made. I'm just asking a different question. As to Ledet and Lindsey, for example, with respect to the 2011 decision, this is an inaccurate statement of the facts, is it not? It is not an inaccurate – it is not an inaccurate statement of the law, because there was argument that was produced. The facts. The facts. It's not an inaccurate statement of the facts, because arguments had been proffered that there were others beyond this group of individuals. No, I understand your argument as to the others. I'm just asking, if I were a juror and I was trying to say, I think Ledet and Lindsey were biased, that there's evidence, you say there's sufficient evidence to go to the jury, I want to look at the judge's instructions. What the judge's instructions tell me is that you deny that the employees were acting within the scope of their authority, and if I find that they weren't acting within the scope of their authority, I must find Ferschel. But the second paragraph – Doesn't that lead the jury to the wrong result? The second paragraph very clearly states that they are the decision-makers, and if they find that the individuals were agents and they were acting within their authority, then they must make the decision. But, counsel, some of those were not contested issues. That is, the scope of authority for some of the individuals who made these decisions was an uncontested, undisputed fact, and it's treated here as a disputed fact. And, you know, the jury is presumed to understand these instructions and try to follow them, and so they're being given information in the last sentence of the first paragraph and in the third paragraph that's not correct. I disagree that this is incorrect information. Tell me why the third paragraph, even under your theory that it only applies to the correct statement of the law, if they found that those individuals weren't acting within the scope of their authority, are they required to find for equivalent? If they found that those individuals were not acting within the scope of their authority, in the context of argument that was made, they would find that these individuals were not individuals who were liable to be found. So what you're saying is this would be an accurate statement of the law if we added some words to it. I'm saying that given the arguments that were made to the jury, the jury had the opportunity to make those determinations as to whether or not the individuals who are not identified in this list, and I do want to address this issue of putting in names. Roberts, before you get to it, though, as to the 2011 claim, who — what you're saying is if you find that one of the individuals who wasn't authorized to make a decision in 2011 somehow did something outside the scope of their authority, you must nonetheless find for equivalent, even though there's sufficient evidence to go to the jury that two of the individuals involved in the decision had acted out of bias? No. That is not the argument that's being made here. I know it's not the argument, but it's what this instruction says. I don't read the instruction that way. I read the instruction to say that as it relates to individuals who are acting within the scope of their authority, then you will find whatever you find. If you find that these individuals are not acting within the scope of the authority, that that conduct should not be imputed to Equilon Enterprises. Counsel, I have a question, and I'd like to hear your response to the argument that this was — this lack of authority is an affirmative defense that was not pleaded and that this — this instruction definitely was not requested by the employer. It was just given by the judge on his own hook. So what effect, if any, should that have on our analysis? Your Honor, I do not believe that this instruction constitutes an affirmative defense that was not pleaded by the — by Shell. Is lack of authority to make a decision ultra vires action an affirmative defense? It can be an affirmative defense, but in this particular circumstance, first of all, with respect to these particular issues, there was — there was a shifting theory as this case went on, and there was a lot of — a lot of argument before the Court about what evidence would and would not come in, and that, in fact, also goes to the issue of the — of the issue of retaliation, for instance. The Court said, I am going to hear all of the evidence and determine what will and will not come in, and so there was no opportunity at the time with a shifting theory after — after the request for a Fifth Amendment to this complaint that we, in fact, plead — plead an affirmative defense. What we had — Well, you had lots of opportunities to plead because, as you say, there were a lot of amended complaints, and, you know, speaking just for myself, I don't think it was necessarily an abusive discretion to say that's enough of them, but you had the opportunities each time also to plead in whatever way was appropriate in response, correct? That's true. Shell did have the opportunity to plead whatever was necessary in response. It was not until the — the issue arose during the course of and subsequent to the request to add additional claims that it became clear that what was really about to take place, at least as it related to this particular argument, was that there was going to be a — a movement of who would and would not be — be the responsible individual. And the Court should be aware, as we stated in our briefs, that as argument in this case went forward, when there was a discussion about putting all of the names of every individual, first of all, it came in the context of a request for a statement that every employee of Shell is, in fact, an agent of the corporation, and, therefore, the acts of every employee of Shell would be acts which should be imputed to the employer. Can we go back to your theory? I just want to address the third paragraph under your theory. Your theory is that the jury understood that the third paragraph was only about the — in effect, the people not authorized to make the decision. That's correct. And that would be Ledet and Fox in 2012, is that correct? In 2012, the argument was that it was Ledet and Fox. Okay. And actually, I'm not sure. There were so many people that the plaintiffs — Okay. With respect to those people, whoever they were, I'm reading the Washington decision in Scribner v. Clark College, and it's in a footnote, so it's not emphasized, but the Supreme Court of Washington says, in fact, we reject the theory that stray remarks by nondecision makers are not relevant to the determination of whether bias was in effect. And this says, if you find that they're — in effect, you would find that they were not decision makers, then you must find for Equilon. Your Honor — Why is that consistent with Washington law? Your Honor, that's a different question, whether or not it's relevant to a determination. Well, no, but you're saying if — this essentially says, not only is it not relevant, but you must find for the employer if you find that these folks were nondecision makers. I don't — I don't see how that comports with Washington law. Once you say it's relevant, you can't say you then must find for the defendant. Your Honor, I believe it — I believe that it is relevant, but I do not believe that this is a misstatement of the law as articulated by the Court, because this — Well, how is it consistent with Scribner? This — this — Judge Cunero was focused specifically on those who were authorized, and as compared to those who were being argued were otherwise involved in the decision making. That's my question. As to those who were otherwise involved, who were unauthorized, as I read the Washington Supreme Court's decision, it says, well, perhaps not dispositive, comments, spray remarks made by those kinds of folks may be taken into account as circumstantial evidence. And this instruction says that what they — if you find they were unauthorized, not only — don't even worry about what they did. You must find for Schell. Your Honor, there are two things that I think need to be pointed out. One, the jury heard all of the argument, even in the face of this instruction, which the appellants were willing to accept if the name Mr. Fox was put into this instruction. Well, that was an alternative argument. I mean, they objected. And in fact, I don't — I don't have your brief in front of me at the moment, but I don't believe that you argued that this issue was incorrectly preserved for our review. So the fact that they asked for an alternative doesn't, I don't think, get you very far. I do believe, however, that it's a demonstration that they knew that they had the ability to make the appropriate arguments under this instruction, and in fact, they did make the arguments that they wanted to make, including a cat's paw theory and instructions that they did not oppose. So is it your view — is it your view that if a lawyer who is unsuccessful in getting the court to refrain from giving a wrong instruction nonetheless makes the best possible argument under that wrong instruction, that somehow that cures everything from the wrong instruction? The question becomes whether or not the — in its entirety, the jury was able to make a determination based upon all of the statements of law and argument that were presented  And all of the statements of law — How does the lawyer's argument cure improper jury instructions? Is that — is that a correct principle? Since we presume the juries follow their instructions. We do presume that juries follow instructions. And in point of fact, we do not believe that. And don't we also presume that a wrong jury instruction is prejudicial? Not in this case, Your Honor. Because the appellant was able to make all of the arguments that they wished to make. But that's what Judge Graber is asking you. Do you have authority for the proposition that when the jury is instructed incorrectly, that that legal error is cured by the fact that counsel argues the theory that she wanted to anyway? I believe that, generally speaking, I don't have specific authority that I can cite to you right now. But I do believe that they — that the appellant was given the opportunity to present the facts as they wanted them presented under these instructions, which clearly, we believe, stated the law correctly. Thank you, counsel. I believe appellants have some rebuttal time remaining. Thank you, Your Honors. I'd like to answer any questions that the panel may have as to the first and second issue. And so I would invite the panel to ask any further questions at this time. I don't believe we have any additional questions. I would also like to point out, Your Honor, that counsel Fischel argues that the instruction is inappropriate because of the evidence — or is appropriate, rather, because of the evidence of bias by Mr. Lede, Mr. Lindsey, and Mr. Fox. And it is exactly because of that evidence why jury instruction number 12 is inappropriate and misstates the law. If those individuals indeed influenced the 2012 decision to not promote plaintiffs, then plaintiffs have won this case. I thank you, Your Honors, for the privilege of this, my First Ninth Circuit argument. Thank you. Thank you. The case just argued is submitted, and we appreciate the helpful arguments from both counsel. And we will take a break for about 10 minutes at this point. Thank you.
judges: Graber, Ikuta, Hurwitz